

*Eileen W. Hollowell*

**Eileen W. Hollowell, Bankruptcy Judge**

_____

1

2

3

4

5

6

7

8

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

9

In re:

10 SUNSET PROFESSIONAL PARK, LLC,

11                Debtor.

Chapter 11

No. 4:09-bk-32194

**MEMORANDUM DECISION**

12

13       A hearing was held on Debtor's "Motion for Entry of Final Decree and To Close Case"

14 on August 1, 2013. Appearing were Sally Darcy, the Ch. 11 Trustee, Christopher Pattock,

15 attorney for the United States Trustee, Robert Schwartz ("Schwartz") and his attorney, D.

16 Michael Romano. Thereafter, Schwartz filed a written objection to certain payments to the

17 equity class having been included as disbursements for purposes of calculating the U.S.

18 Trustee quarterly fee, under 28 U.S.C. § 1930(a)(6). The U.S. Trustee responded in

19 opposition. The court took the matter under advisement, and having reviewed all the

20 pleadings, arguments and the law, now rules.

21                                   **JURISDICTION**

22

23       The court has jurisdiction under 28 U.S.C. § 1334(b) and § 157(b)(2)(A).

                                  **DISCUSSION**

24

25       Debtor's confirmed plan provided for payment of Class 6 as follows:

26

27         <u>Class 6</u>. The members/equity owners of Debtor will retain their interest in the
Debtor and will receive the balance of the funds after all claims have been paid in full

28         as and when Allowed by the Court, unless the Court allows an earlier distribution

after requiring the Trustee to reserve sufficient funds to pay in full Administrative Claims, Allowed Claims, and unsecured claims that are disputed and which may become Allowed Claims.

In accordance with the confirmed plan, the Chapter 11 Trustee paid Class 6 a total of $667,000 during the second quarter of 2013. The U. S. Trustee included that payment in the calculation of its quarterly fee under 28 U.S.C. § 1930(a)(6), determining that the fee owed for the second quarter of 2013 was $4,875.00.

Robert Schwartz, the 100% equity member of Debtor, objected. Schwartz, citing In re Celebrity Home Entertainment, 210 F.3d 995 (9th Cir 1994) and St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525 (9th Cir. 1994), *modified*, 45 F.3d 969 (9th Cir. 1995)), maintained that "disbursements" to equity interests should not be part of the determination of U.S. Trustee fees under the statute, which provides, in pertinent part:

> **(6)** In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $325 for each quarter in which **disbursements** total less than $15,000; $650 for each quarter in which disbursements total $15,000 or more but less than $75,000….

28 U.S.C. § 1930(a)(6) (emphasis added).

The term "disbursements" is not defined in the statute. Thus it is given its ordinary meaning. See Smith v. United States, 508 U.S. 223, 228 (1993) (holding that a word that is undefined in a statute must be given its ordinary meaning). The definition of "disburse" is "to pay out: expend especially from a fund." Merriam-Webster.com 2013.

In the Ninth Circuit the term is interpreted broadly. See Celebrity Home, 210 F.3d at 998 (holding that "disbursements" is an "expansive" term that captures "all payments," whether to secured or unsecured creditors") (quoting Victoria Farms, 38 F.3d at 1534. The issue in Celebrity Home was whether the fee included disbursements made by a reorganized debtor post-confirmation, in a case prior to the 1996 amendment which specifically included such

disbursements. The fee issue in St. Angelo was whether "disbursements" excluded all payments made by a third party to a secured creditor from the sale proceeds of the secured property. 38 F.3d at 1533. The appellate court concluded that "Congress clearly intended 'disbursements' to include a*ll* payments from the bankruptcy estate." Id. at 1534.

Neither opinion cited by Schwartz directly addresses the subject of equity disbursements pursuant to a plan. Accordingly, neither opinion can be read as intentionally restricting the definition of "disbursements" solely to creditors. Indeed, the Eleventh Circuit Court of Appeals found support in Celebrity Home to find that "Congress intended the UST fee to apply to all disbursements made during the entire [reorganization] process, including ordinary operating expenses, before or after confirmation, as a type of user tax on those who benefit the most from the program." In re Jamko, Inc. 240 F.3d 1312, 1316 (11th Cir. 2001) (alteration added).

Schwartz also cites an Illinois bankruptcy case which concluded that the term "disbursements" "should . . . be limited to payments of claims or expenses." In re Hissi, Inc., 176 B.R. 809, 815 (Bankr. N.D. Ill. 1995). The facts in Hissi are distinguishable. There, the U.S. Trustee was attempting to include intercompany transfers of collateral proceeds from a blocked account to a concentration account, from which the proceeds were then transferred to the secured creditor. Fearing that rehabilitative purposes of chapter 11 would be undermined if the U.S. Trustee were able to "collect multiple fees for a single economic transaction," all "because of an efficient cash-management system," the Hissi court denied the U.S. Trustee's motion for payment of fees. Id. at 814-15. Those same concerns are not present here.

Finally, Schwartz quotes from an unpublished memorandum decision from a Texas bankruptcy court which required Debtor to report "disbursements to creditors under the plan," in connection with the quarterly fees. See In re Brown, 2008 WL 899333 at *5 (Bankr. S.D. Tex. March 31, 2008). The issue in Brown was whether the quarterly fee calculation should

include "not only Debtor's distributions under the plan, but also Debtor's expenditures, as measured by Debtor's schedule J." Id. at *2.   The bankruptcy court also stated:

> "[D]isbursements" described in 28 U.S.C. § 1930(a)(6) are those disbursed on priority and administrative expense claims, the claims of creditors, **and the interests of equity security holders** pursuant to the plan.

Id. at *4 (emphasis added).    In fact, Brown is the only case the Court has found which specifically holds that payments to equity holders as being disbursements under 28 U.S.C. § 1930(a)(6), and thus it supports the U.S. Trustee's position.

The official Quarterly Post-Confirmation Report posted on the Court's website lists distributions to equity security holders in the list of disbursements, and contains this conspicuous message: ALL DISBURSEMENTS MADE BY THE REORGANIZED DEBTOR, BE THEY UNDER THE PLAN OR OTHERWISE, MUST BE ACCOUNTED FOR AND REPORTED HEREIN FOR THE PURPOSE OF CALCULATING THE QUARTERLY FEES. See form @ www.azb.uscourts.gov.

Until Congress sees fit to define "disbursements" under the quarterly fee statute, and without more definitive case law on this subject,   this Court follows the Ninth Circuit's expansive view of the term, and concludes that payments to equity interests are disbursements to be calculated under 28 U.S.C. § 1930(a)(6).

**CONCLUSION**

All payments under the confirmed plan of reorganization, including payments to Class 6 equity holders, are to be included in the calculation of the U.S. Trustee's quarterly fees.  A separate order will be entered overruling the objection of Schwartz.  The Chapter 11 Trustee is directed to upload an order closing this chapter 11 case.

DATED AND SIGNED ABOVE.

To be NOTICED by the BNC
("Bankruptcy Noticing Center") to:

Debtor
Sunset Professional Park, LLC
7898 N. Ancient Indian Dr.
Tucson, AZ 85718

Debtor's Attorney
Clifford B. Altfeld
250 N. Meyer Ave.
Tucson, AZ 85701-1090

Chapter 11 Trustee Sally Darcy
McEvoy, Daniels & Darcy, P.C.
4560 East Camp Lowell Dr.
Tucson, AZ 85712

Attorney for Robert Schwartz
D. Michael Romano
Romano & Assocs., PLLC
4050 W. Costco Dr.
Tucson, AZ 84741

Office of the U.S. Trustee
Christopher Pattock
230 N. 1st Ave., #204
Phoenix, AZ 85003-1706